IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EMILY MINOR,

    Plaintiff,

v.                                  No. CIV 11-0120 JCH/SMV

LEGAL FACS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment (Doc. 51) and Memorandum in Support (Doc. 52), filed December 1, 2011. Having reviewed the parties' submissions, including Plaintiff's Surreply (Doc. 60), and the relevant law, the Court finds that Defendant's Motion is well-taken in part and will therefore enter summary judgment as to Count I in favor of Defendant. The Court will deny summary judgment as to Count II.

**I.**    **BACKGROUND**

Plaintiff worked as a bookkeeper for Defendant Legal FACS from February 23, 2010 through April 30, 2010, when Executive Director Andre Shiromani terminated her employment. *See* Doc. 52 at 2. Previous to her dismissal, Plaintiff reported concerns about Legal FACS' management to the Board of Directors. First, on April 28, 2010, Plaintiff emailed Board Member Amanda Hartmann, reporting concerns about Mr. Shiromani's approval of a raise for another employee, M.W. *See* Doc. 52-1 at 2.

> The concerns I have about this are: 1. the large nature of the raise, 2. the incredibly fast time-line that bypassed me and used Deb to justify the budget - why was this necessary? and 3. this would be the second large benefit give [sic] to M.W. by A.S, [sic] that is not part of a documented policy or available to other employees. ...

*Id.*  The other benefit to M.W. reported by Plaintiff was Legal FACS' continued payment of M.W.'s health, dental, and vision insurance during a month-long period when M.W. took leave without pay.  *Id.*  Although Plaintiff also reported unidentified "concerns about how this was paid for," she indicated that this "is and [sic] entirely different issue and should be dealt with at another time."  *Id.*

Ms. Hartmann, the sole recipient of Plaintiff's April 28, 2010 email, alerted her fellow board member, Lisa Stifel, to the concern raised by Plaintiff.  *See* Doc. 52-2 at 4.  Legal FACS Board Member Helen Bennett received a copy of the April 28, 2010 email directly from Plaintiff.  *See* Doc. 54-1 at 1.  Ms. Bennett then forwarded the April 28, 2010 email to Mr. Shiromani.  *See* Doc. 53-1 at 4 (p. 107-109).

On April 29, 2010, Plaintiff sent a second email to Legal FACS Board Members Amanda Hartmann, Lisa Stifel, and Krik Mielke.  *See* Doc. 52-4 at 6.  Plaintiff's opening line is "Please forward this to the rest of the Board of Directors, I do not have their email addresses."  *Id.*  Plaintiff expressed her concern that money Legal FACS obtained from a Department of Justice grant was used to pay an employee's salary although the employee in question, A.M., did not work on the program DOJ intended to fund.  *See* Doc. 52-4 at 6-7.  At the conclusion of the April 29, 2010 email, Plaintiff states, "I have informed the Department of Justice of my concerns."  *Id.* at 7.

Ms. Hartmann forwarded the April 29, 2010 email to Leigh Anne Chavez, another member of the Legal FACS Board of Directors.  *See* Doc. 52-4 at 1.  Ms. Chavez instructed Ms. Hartmann to "hold off on anything sent to the whole board" and asked Ms. Hartmann to instruct Plaintiff "to please continue to communicate with you or me, and not to send anything directly to anyone else for now."  *Id.* at 5.  Ms. Hartmann conveyed Ms. Chavez' request to Plaintiff.  *See*

*id.* at 4. Ms. Hartmann, Ms. Chavez, Ms. Stifel, and Mr. Mielke all testified that they did not advise Mr. Shiromani of Plaintiff's April 29, 2010 email before Mr. Shiromani terminated Plaintiff on April 30, 2010. *See* Doc. 52-2 at 3; Doc. 52-4 at 2; Doc.52-5 at 1-2; and Doc. 52-6 at 1-2. Although Ms. Stifel testified that she discussed the contents of the April 29, 2010 email with another Legal FACS Board Member, Helen Bennett, *see* Doc. 52-5 at 2, Ms. Bennett has testified that she did not discuss the contents of the April 29, 2010 email with Mr. Shiromani prior to his termination of Plaintiff, *see* Doc. 54-1 at 1-2. Defendant therefore contends that Mr. Shiromani acted without knowledge of Plaintiff's concerns about the misappropriation of DOJ grant funds.

Plaintiff filed the instant lawsuit in February 2011, alleging retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h)(1) and wrongful discharge under New Mexico common law. *See id.* at 2-3. Defendant argues there was no violation of the False Claims Act and, therefore, no violation of New Mexico law regarding wrongful discharge because Mr. Shiromani made the decision to fire Plaintiff before he knew she had reported any concern about misuse of funds. *See generally* Doc. 52. In a document purporting to set forth his reasons for terminating Plaintiff, Mr. Shiromani referred to "Emily's implication that I am embezzling money." *See* Doc. 52-7 at 5. This, Plaintiff contends, is sufficient to show that Mr. Shiromani suspected that Plaintiff had engaged in protected activity; thus, Plaintiff argues her retaliatory discharge claim should survive summary judgment.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable

jury could resolve the issue either way.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  A mere scintilla of evidence in the non-movant's favor is not sufficient.  *Anderson*, 477 U.S. at 252.  However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment.  *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions.  FED.R.CIV.P. 56(c)(1)(A) (emphasis added).  Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED.R.CIV.P. 56(c)(1)(B).  *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)).  Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence.  FED.R.CIV.P. 56(c)(2).

The court need only consider the materials cited by the parties.  FED. R. CIV. P. 56(c)(3).  In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment.  FED. R. CIV. P. 56(e).  The court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond.  FED. R. CIV. P. 56(f).

### III.     ANALYSIS

#### A.     The Undisputed Material Facts Support Summary Judgment On Plaintiff's Claim of Retaliation in Violation of the False Claims Act.

The False Claims Act provides that

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). Success under this "whistleblower" provision requires the employee to show by a preponderance of the evidence that her employer took action against her "because" of her participation in a protected activity. *See U.S. ex rel. Erickson v. Uintah Special Servs. Dist.*, 268 Fed.Appx. 714, 716 (10th Cir. 2008) (citing S.Rep. No. 345 at 35, 99th Cong., 2d Sess. 35 (1986), reprinted in U.S.S.C.A.N. 5266, 5300). There is no requirement that an FCA action "is ultimately successful or even filed." *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996).

It is necessary, however, for the employer to have knowledge that the employee is engaging in protected activity under the False Claims Act. *See id.* (recognizing that "[i]f defendants were not afforded such knowledge, then, *a fortiori*, their actions could not constitute retaliation"). *Accord Adler v. Continental Ins. Co.*, 133 F.3d 932 (Table), 1998 WL 10232 at *2 (10th Cir. 1998) (affirming dismissal of FCA retaliation claim where "there exists no record evidence that the two persons who made the decision to terminate Adler had knowledge of her alleged whistle-blowing activities prior to their decision to discharge her"). The employee's mere statement to her employer, advising the employer that it was not complying with federal

law, is not sufficient.  *See Century Healthcare*, 90 F.3d at 1523 (affirming dismissal of FCA retaliation claim where "[p]laintiff gave no suggestion that she was going to report such noncompliance to government officials").

There is no dispute in the present case that Plaintiff's April 29, 2010 email constitutes protected activity under the False Claims Act.  The last line of Plaintiff's April 29, 2010 email states, "I have informed the Department of Justice of my concerns."  *See* Doc. 52-4 at 7.  There is no dispute that Legal FACS board members Amanda Hartmann, Lisa Stifel, Krik Mielke, and Leigh Anne Chavez received the April 29, 2010 email prior to Plaintiff's termination.  *See* Doc. 52-4 at 6-7.  However, Plaintiff admits that none of these board members played any role in the decision to terminate Plaintiff.

The primary issue on summary judgment is whether Legal FACS Executive Director Andre Shiromani knew about Plaintiff's protected activity (i.e., the April 29, 2010 email) before he terminated her employment.  In support of their position that Mr. Shiromani had no such knowledge, Defendant offers the testimony of the man himself, who unequivocally stated, "nobody sent me that e-mail before I fired [Plaintiff]."  Doc. 52-3 at 3.  Defendant also presents testimony of each of the individuals who received the April 29, 2010 email, demonstrating that none of them shared the April 29, 2010 email with Mr. Shiromani.  *See* Doc. 52-2 at 3 (Hartmann); Doc. 52-4 at 2 (Chavez); Doc.52-5 at 1-2 (Stifel); Doc. 52-6 at 1-2 (Mielke); and Doc. 54-1 at 1-2 (Bennett).  Plaintiff purports to dispute these facts, arguing that information contained in the April 29, 2010 email may have reached Mr. Shiromani through Legal FACS Board Member Helen Bennett, a person Mr. Shiromani considered "supportive."  *See* Doc. 53-1 at 4 (p. 109).  While Plaintiff is correct that the Court must construe all reasonable inferences in her favor, *see* Doc. 53 at 10, the Court cannot ignore undisputed facts.  It is undisputed in this

case that Helen Bennett "did not communicate the information that was contained in Emily Minor's April 29, 2010 e-mail ... with Andre Shiromani." *See* Doc. 54-1 at 2. Likewise, it is undisputed that Ms. Bennett never discussed Ms. Minor's termination with Andre Shiromani. *See id.*; Doc. 52-3 at 3 (Shiromani testifying that no one at Legal FACS told him about Plaintiff's April 29, 2010 email until after he terminated Plaintiff). Because Mr. Shiromani's lack of knowledge is undisputed, summary judgment is appropriate in Defendant's favor.

Plaintiff also raises the question whether Legal FACS Board Member Helen Bennett used Mr. Shiromani as a "cat's paw"[1] to effectuate the termination of Plaintiff. *See* Doc. 53 at 11-13. Under these circumstances, Plaintiff contends that Mr. Shiromani's knowledge of the April 29, 2010 email is unnecessary. *See* Doc. 53 at 11-13. As long as Ms. Bennett knew of Plaintiff's protected activity, she could have used Mr. Shiromani to effectuate Plaintiff's termination. *See id.* Ms. Bennett, however, has testified that: (1) she did not communicate the contents of the April 29, 2010 to Andre Shiromani prior to Plaintiff's termination, and (2) she did not discuss Plaintiff's termination with Mr. Shiromani nor influence Mr. Shiromani's decision to terminate Plaintiff prior to the termination. *See* Doc. 54-1 at 2. Likewise, Mr. Shiromani does not recall

---

[1] Plaintiff describes the "cat's paw" theory as follows:
> The "cat's paw" doctrine derives its name from a fable, made famous by La Fontaine, in which a monkey convinces an unwitting cat to pull chestnuts from a hot fire. As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none left for the cat. Today the term "cat's paw" refers to "one used by another to accomplish his purposes." In the employment discrimination context, "cat's paw" refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action.

*See* Doc. 53 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006) (internal citations omitted)).

speaking with Ms. Bennett about Plaintiff's termination before he terminated Plaintiff. *See* Doc. 53-1 at 5 (p. 110). In fact, Mr. Shiromani testified, "I believe I talked to Helen after that, and she didn't think it was the best way to go about it. She certainly didn't know that I was going to fire [Plaintiff]." *See id.* As there are no facts to support Plaintiff's cat's paw theory, and the undisputed material facts contradict the cat's paw theory, this theory cannot preclude summary judgment.

> **B.    Plaintiff's Wrongful Discharge Claim Survives Summary Judgment Due to Mr. Shiromani's Stated Belief that Plaintiff Accused Him of "Embezzlement."**

Defendants also seek summary judgment as to Plaintiff's wrongful discharge claim. New Mexico courts recognize the common-law tort of retaliatory discharge, which "requires an employee to show that he was discharged because he performed an act that public policy authorizes or encourages." *Weidler v. Big J Enterprises, Inc.*, 953 P.2d 1089, 1095 (N.M. Ct. App. 1997). To determine New Mexico's public policy, courts may look to legislation. *See id.* at 1096 (holding that "if there is a statute prohibiting certain actions, we view that as a statement of public policy which may be used to support the common-law cause of action"). Like Plaintiff's claim for FCA retaliation, common-law retaliatory discharge claims require a showing that the employer knew of the employee's allegedly protected activity. *See id.* at 1097 (recognizing that "[c]learly, an employer cannot fire an employee in retaliation for actions of which the employer is unaware" (internal citations omitted)). Therefore, "there must be some evidence that the employer was aware, either by suspicion or actual knowledge, of the protected activity." *Id.*

In addition to the required element of the employer's knowledge, New Mexico law requires that "the employee must identify a specific expression of public policy." *Vigil v.*

*Arzola*, 699 P.2d 613, 621 (Ct. App. 1983)(holding that "[a] general allegation that the discharge contravened public policy is insufficient; to state a cause of action for retaliatory or abusive discharge the employee must identify a specific expression of public policy"), *rev'd in part on other grounds*, 687 P.2d 1038 (1984), *overruled on other grounds*, *Chavez v. Manville Prods. Corp.*, 777 P.2d 371 (1989).

Plaintiff's Complaint asserts that her termination was in violation of New Mexico's public policy of encouraging employees "to report potentially unethical and illegal conduct." *See* Doc. 1 at 3.  Specifically, Plaintiff alleges that she reported "Defendant's misuse of OJP Grant funds." *Id.  Accord* Doc. 63 at 3 (indicating, consistent with the Complaint, that "Plaintiff contends that Defendant terminated Plaintiff's employment in retaliation for Plaintiff voicing her concerns regarding Defendant's arguable misuse of OJP Grant monies").  Other than the mismanagement of federal funds, Plaintiff does not identify any public policy at issue.  *See* Doc. 53 at 15 (citing *Vigil v. Arzola*, 699 P.2d 613 (Ct. App. 1983) for the proposition that "misuse of federal funds contravenes New Mexico public policy irrespective of whether it would violate the FCA").

The undisputed material facts initially demonstrate that Mr. Shiromani had no actual knowledge of Plaintiff's report regarding misuse of OJP grant funds.  *See* Part A, *infra*.  Looking to Plaintiff's April 28, 2010 email, of which Mr. Shiromani was undisputedly aware at the time he fired Plaintiff, there is no reference to misuse of OJP grant funds.  *See* Doc. 52-1.  Plaintiff's April 28, 2010 email references payments to employees by Legal FACS, not from any particular grant.  *See id.*  Although Plaintiff states that she has "concerns about how this was paid for," she does not explain them, stating instead that this "is and [sic] entirely different issue and should be dealt with at another time." *Id.* at 2.  Furthermore, Plaintiff's April 28, 2010 email states that the

9

expenses questioned therein "may be entirely justifiable, but it is not my role to make that decision." *Id.*

Despite lacking actual knowledge, however, Mr. Shiromani undisputedly believed that Plaintiff had accused him of embezzlement. *See* Doc. 52-7 at 5 ("Emily's implication that I am embezzling money is offensive and unfounded."). Plaintiff argues that this alone enables her common-law retaliatory discharge claim to survive summary judgment. *See* Doc. 53 at 16 (arguing that "Mr. Shiromani's stated belief ... that Ms. Minor was insinuating that he was embezzling money—which he lists as a reason supporting her termination—is sufficient on its own to support that he was, at a minimum, suspicious that she was engaging in protected activity"). The Court agrees with Plaintiff.

New Mexico law provides that claims of an employer's mere mismanagement is not sufficient to support a claim for retaliatory discharge; however, evidence of misuse of public money will support such a claim. *See Vigil v. Arzola*, 699 P.2d at 621. For instance, where a company is primarily, if not solely, funded by the federal government, the New Mexico Court of Appeals held that a claim for retaliatory discharge should survive summary judgment based on evidence of the terminated employee's report that the employer (1) paid himself and his bookkeeper unauthorized salaries, and (2) used federal money to purchase liquor and food. *See id.* The employee's other allegations, including the employer's allowing unauthorized signatures on corporate documents, holding land for speculation contrary to non-profit status, failing to advertise certain positions, and bidding irregularities such as favoring his father and political allies were allegations of mere mismanagement and therefore not sufficient to support a claim for retaliatory discharge. *See id.* (holding that "[w]hile most of plaintiff's allegations involve mismanagement, the allegations with regard to unauthorized payment of salaries and the

purchase of food and liquor from federal funds, if proven, could provide a basis for relief, assuming other elements of the cause of action are established.").

The present case is similar to *Vigil v. Arzola*. Because Legal FACS is largely publicly funded, Plaintiff's believed accusation of embezzlement amounts to a protected activity. As such, Plaintiff's retaliatory discharge claim survives summary judgment.

## IV.  CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that Defendant Legal FACS Motion for Summary Judgment (Doc. 51) shall be **GRANTED IN PART**. Plaintiff's Count I, seeking damages for retaliation in violation of the False Claims Act, is dismissed with prejudice. However, summary judgment is denied as to Plaintiff's Count II, seeking damages for retaliatory discharge.

_____
UNITED STATES DISTRICT JUDGE

11